JULES E. FILIERE *v.* THE MANCHESTER INVESTMENT
CORPORATION

APPELLATE SESSION OF THE SUPERIOR COURT

FILE No. 1091

Argued May 19–decided August 14, 1981

*Anthony J. Gryk,* for the appellant (plaintiff).

*Stephen F. McEleney,* for the appellee (defendant).

SHEA, J.  In this summary process action for non-payment of rent the trial court rendered judgment for the defendant lessee.  The plaintiff lessor has appealed, claiming error in the construction adopted by the trial court of certain provisions of the lease which pertain to the payment of property taxes as additional rent and to the procedure to be followed upon default.

There is no dispute about the determinative facts, which may be summarized as follows:  On June 30, 1953, the parties executed a written lease of property at 887-889 Main Street, Manchester, for a period of fifty years commencing October 1, 1953.  The lease provided for a "fixed annual rent" payable in advance in equal monthly instalments on the first day of each month of the term.  It also contained a provision for payment of "additional rent," consisting of various operating expenses such as the cost of alterations, replacements and repairs, insurance premiums, water

and sewer charges, electricity and electrical equipment charges, heating expenses, and the particular subject of this controversy, property taxes in excess of those which prevailed in 1953.

On July 31, 1980, the plaintiff advised the defendant by letter that he had paid the taxes on the property for the tax year October 1, 1979 to October 1, 1980. He requested reimbursement of $6819.80, the amount which he had paid in excess of the 1953 taxes and which the lease obligated the defendant to pay. The same procedure of the landlord first paying the taxes and then seeking by letter reimbursement from the tenant had been followed for at least the preceding two years. In those years the letters seeking reimbursement were dated August 26, 1978, and August 24, 1979, respectively. Payments of the amounts requested were made on October 5, 1978, and September 27, 1979, and those were accepted without objection.

When payment of the tax reimbursement requested in his letter of July 31, 1980, had not been received by September 16, 1980, the plaintiff caused a notice to quit possession to be served upon the defendant "for failure to pay your additional rent in the amount of $6819.80 which was due on September 1, 1980." On September 18, 1980, the defendant delivered its check for the claimed amount to the plaintiff, who was holding it at the time of trial.[1]

The "additional rent" clause of the lease provided in a subparagraph that any sums payable thereunder "shall be duly and punctually paid by the Lessee, to the end that the Lessor shall receive an annual fixed rent of the net sums herein stated, and the same shall

[1] The plaintiff's retention of this check was the basis for a defense of waiver raised by the defendant lessee. The trial court found it unnecessary to decide this issue because of the result reached upon other grounds. We have come to the same conclusion and we omit the additional facts relating to this issue.

be free from the payment of any and all manner and kind of costs, charges, expenses, or disbursements except as otherwise provided in this lease." The trial court concluded that this provision established as the time limit for payment of the lessee's share of the property taxes the conclusion of the tax year for which the taxes involved had been imposed, September 30, 1980. Since the defendant had made the requested payment before that date, it was held not to be in default.

As another ground of the decision for the defendant, the trial court construed two paragraphs of the lease, which required thirty days' written notice of default in the performance of a covenant of the lessee prior to termination, as allowing a grace period for the lessee to cure any default, such as nonpayment of "additional rent," within that time. The letter requesting reimbursement for the taxes was deemed not to constitute the requisite notice under those provisions because it did not purport to be a notice of default.

In challenging the conclusions of the trial court, the plaintiff landlord must surmount the established doctrine that ambiguities in a lease must be resolved in favor of the lessee. *Perruccio* v. *Allen,* 156 Conn. 282, 285, 240 A.2d 912 (1968); *Connecticut Land & Mortgage Co.* v. *Lesser,* 136 Conn. 580, 583, 72 A.2d 805 (1950). It is an understatement to characterize the provisions of the lease before us as not entirely harmonious. The clause[2] upon which the plaintiff relies to

---

[2] This provision is contained in paragraph 3 of the lease which is as follows: "3. If Lessee shall default in the performance of any covenant on Lessee's part to be performed by virtue of any provisions in any article in this lease contained, Lessor may perform the same for the account of Lessee if Lessee fails to cure the default within thirty (30) days after receiving written notice of such default provided, however, that Lessor may obtain for account of Lessee any insurance required hereunder if Lessee shall fail to provide such insurance, notwithstanding foregoing clause. If Lessor at any time is compelled to pay or elects to pay any sum of money, or do any act which will require the payment of any sum of

dispute the determination of the trial court that the property tax reimbursement need not be paid until the end of the tax year provides that, if the landlord pays any sum of money for which the lessee is obligated under the lease, the amount paid "shall be deemed to be additional rent hereunder and shall be due from Lessee to Lessor on the first day of the month following the incurring of such respective expenses." This provision, which standing alone would not even require notice to the tenant that a particular expense had been incurred, is preceded by another sentence in the same paragraph which states that upon default in any covenant by the lessee, the lessor himself may fulfill the covenant after failure of the lessee to do so within thirty days after receiving written notice of the default. We think the two sentences comprising the third paragraph of the lease must be read together and that the second sentence, establishing the due date for reimbursement of the landlord as the first day of the month following the incurring of the expense, becomes applicable only after the landlord has given the tenant an opportunity to cure the default by serving the thirty-day notice called for in the first sentence. It is not claimed that any such notice was given here.

The plaintiff relies also upon the fourth paragraph of the lease which is composed of two subparagraphs. The first[3] provides that if the lessee should default "in

---

money, by reason of the failure of Lessee to comply with any provision hereof, or, if Lessor is compelled to incur any expense including reasonable attorneys' fees in instituting, and successfully prosecuting and/or successfully defending any action or proceeding instituted by reason of any default of Lessee hereunder, the sum or sums so paid by Lessor with all interest, costs and damages, shall be deemed to be additional rent hereunder and shall be due from Lessee to Lessor on the first day of the month following the incurring of such respective expenses."

[3] Subparagraph 4 (a) of the lease is as follows: "4. (a) If Lessee shall make default in fulfilling any of the covenants of this lease other than the covenants for the payment of rent or additional rent, or if the demised premises become vacant or deserted, Lessor may give Lessee thirty (30)

fulfilling any of the covenants of this lease other than the covenants for the payment of rent or additional rent, or if the demised premises become vacant or deserted," the lessor may give a thirty-day written notice of intention to terminate the lease which would become effective upon the expiration of that period if the default continued to exist. It is clear that this paragraph did not contemplate the giving of any such notice where the default consisted of the failure to pay the "fixed rent" or any item of "additional rent."

The second subparagraph[4] contains the provision which the plaintiff claims governs the situation: "If the notice provided for in [the first paragraph] shall have been given, and the term shall expire as aforesaid; or if Lessee shall continue to be in default in the payment of the rent reserved herein by more than ten (10) days or shall continue to be in default in the payment of any item of additional rent herein mentioned or any part of either or in making other payment herein provided for thirty (30) days after receiving written notice of such default; . . . then and in any of such events Lessor may dispossess Lessee . . . by summary proceedings or other legal

days' written notice of intention to end the term of this lease and thereupon, at the expiration of said thirty (30) days (if said default continues to exist) the term under this lease shall expire as fully and as completely as if that day were the day definitely fixed for the expiration of the term, and the Lessee will then quit and surrender the demised premises to Lessor but Lessee shall remain liable as hereinafter provided."

[4] Subparagraph 4 (b) of the lease is as follows: "(b) If the notice provided for in 4 (a) hereof shall have been given, and the term shall expire as aforesaid; or if Lessee shall continue to be in default in the payment of the rent reserved herein by more than ten (10) days or shall continue to be in default in the payment of any item of additional rent herein mentioned or any part of either or in making other payment herein provided for thirty (30) days after receiving written notice of such default; or if any execution shall be issued against Lessee or any of Lessee's property whereupon the demised premises shall be taken or occupied or attempted to be taken or occupied by someone other than Lessee; then and in any of such events Lessor may dispossess Lessee, the legal representative of Lessee or other occupant of demised premises, by summary proceedings or other legal action."

action." The plaintiff contends that the "additional rent" consisting of the property tax reimbursement became due, like the "fixed rent," on the first day of September, 1980, the next month following the delivery of the request for reimbursement, and that the defendant was in default by failing to make payment within ten days thereafter. This argument is subject to the infirmity that the only manner provided by the lease in which September 1, 1980, could have become the date for payment of the "additional rent" was by giving a thirty-day notice of default for failure to perform a covenant of the lessee in accordance with the third paragraph of the lease. The lease contains no other provision establishing the time for payment of "additional rent" except on on annual basis, as concluded by the trial court, or for giving notice of the amount of "additional rent" claimed. The plaintiff suggested in argument that the amount of taxes due could have been ascertained from the appropriate town officials. The "additional rent" provision, however, covered many other operating expenses which the landlord might have incurred, such as heat, electricity, and needed repairs, the amount of which could not have been readily discovered by the tenant. The plaintiff himself recognized the necessity for notice by following the practice of informing the defendant each year of the amount of taxes due. His difficulty is that his letter furnishing such information was in the form of a polite request rather than a notice of default, as required by the third paragraph in order to convert the tenant's obligation into "additional rent" due on a particular date. Any such notice of default would have allowed the tenant thirty days to cure the breach of covenant claimed. The plaintiff does not contend that his letter satisfied the requirement of the lease for a notice of default.

Although we affirm the judgment of the trial court, we do not adopt the view expressed in the memoran-

dum of decision that the tax reimbursement "need only be made in sufficient time to reimburse the plaintiff within the same year as the tax payments to the town are made." The "annual fixed rent of the net sums herein stated" to which the lease refers is geared to the lease year rather than to the tax year of Manchester, even though they may coincide at the present time.[5] The statement of the trial court would also be subject to the qualification that, if the landlord proceeds to follow the procedure outlined in the third paragraph by serving a notice of default allowing thirty days for the tenant to fulfill the particular obligation involved before doing so himself, the amount expended by the landlord becomes "additional rent" payable on the first day of the month following payment.

There is no error.

In this opinion BIELUCH and COVELLO, Js., concurred.

---

[5] The lease provided for a fifty-year term to commence on October 1, 1953 or on such later date as the lessor should be able to deliver complete possession to the lessee. Presumably the term commenced on October 1, 1953 because no written addendum indicating a different date is included in the lease documents introduced in evidence. The Manchester tax year also begins on October 1.